**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PATRICIA CARESS McMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DIYON EVANS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A04-1104-CR-227 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-0906-FB-53420

**January 11, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Diyon Evans appeals his convictions for Rape,[1] a class B felony, and Criminal Deviate Conduct,[2] a class B felony, alleging that the trial court erroneously admitted hearsay testimony and that the evidence is insufficient to support the convictions. Specifically, Evans argues that the victim's statements to her sister and sexual assault examiner were improperly admitted into evidence as exceptions to the hearsay rule. He also argues that the evidence was insufficient to show that the victim was compelled to submit to sexual conduct by force or threat of force. Finding no error and concluding that the evidence was sufficient, we affirm.

FACTS

In April 2009, A.K. was a 37-year-old resident at Eagle Valley Meadows, a long-term care facility in Indianapolis. A.K.'s family had placed her in the facility after she suffered a ruptured brain aneurysm that left her severely physically handicapped and unable to care for herself. She breathes through a tracheotomy tube and is fed through a tube. Although A.K. has feeling in her limbs, she maintains only a slight ability to move her left hand. The aneurysm did not affect her cognitive functions, and she communicates through hand gestures to indicate "yes" and "no" using her left hand. A.K.'s sister, M.K., visited A.K. at the facility every day.

On April 7, 2009, Evans was working as a Certified Nursing Assistant at the facility. He was assigned to take care of A.K., which included bathing her. At

---

[1] Ind. Code § 35-42-4-1.

[2] I.C. § 35-42-4-2.

approximately 9:00 a.m., Evans entered her room and remained inside with the door closed for twenty to thirty minutes. A.K. did not have a roommate, and no one else was in the room while the door was closed.

When M.K. arrived at the facility later that day, A.K. immediately began crying when she saw M.K. M.K. described the crying as "terrifying." Tr. p. 227. This was not the first time that M.K had seen A.K. cry, but because of the nature of her crying, M.K. suspected that something terrible had happened. M.K. asked A.K. a series of investigative questions to deduce what was wrong, beginning with whether her head hurt. A.K. gestured "no" to each of those questions. Id. at 226-27. Then, not believing it to be a serious question, M.K. asked A.K. if she had been raped. A.K. began to cry harder and gestured "yes." Id. at 227.-28. M.K. further questioned her sister, and A.K. signaled "yes" when asked whether it was one of her caretakers and whether that person was a man. A.K. also indicated she had been touched in her vagina and "butt" and gestured "yes" when asked whether the person had put his penis into her vagina and "butt." Id. at 231, 234-35.

M.K. then reported the information to the on-duty nurse, who subsequently reported the information at around 5:00 p.m. to Linda Wilkinson, a health care administrator at Eagle Valley Meadows. Upon learning of the rape, Wilkinson determined that only two male nurses were working in A.K.'s hallway that day, one being Evans. Wilkinson presented the other male nurse to A.K., and A.K. signaled "no" and smiled. Id. at 65. Wilkinson reviewed the facility's security camera video and

observed that Evans was the only male in A.K.'s room earlier in the day with the door closed. Wilkinson then called the police.

Around 8:00 p.m., A.K. was taken to Methodist Hospital, where she was examined by Joyce Fuss, a registered nurse and sexual assault nurse examiner. Fuss asked A.K. a number of "yes" or "no" questions. When asked whether she was penetrated vaginally and rectally, she responded "yes." Id. at 102-05. Fuss examined A.K. and observed injuries to A.K.'s posterior fourchette, the thin piece of skin below the vaginal opening, and a rectal tear. Because of the rectal tearing, A.K. was prescribed an anti-viral medication. Fuss collected swabs of A.K.'s vagina and the adult diaper she was wearing for testing. Seminal fluid, including sperm, was found on the external genital swab and on the adult diaper. The DNA profile of the sperm cells on the external genital swab matched that of Evans to "a reasonable degree of scientific certainty" or "one in 6 sixtillion" African Americans. Id. at 173-74.

On April 10, 2009, Indianapolis Metropolitan Police Department Detective Kevin Lauerman interviewed Evans. Evans admitted to being in A.K.'s room for twenty to thirty minutes on April 7, but claimed he only bathed her. On June 3, 2009, Detective Lauerman obtained an arrest warrant for Evans, called Evans on the phone, and arranged to meet with Evans at Evans's home later that day. When he arrived, Evans was no longer there, and he was unable to locate Evans for several days. On June 8, 2009, Evans was arrested in Alabama.

4

On June 3, 2009, the State charged Evans with rape, a class B felony, criminal deviate conduct, a class B felony, and sexual battery, as a class D felony.

At trial, the State called Fuss and M.K. to testify. Fuss testified that, when asked where she felt pain, A.K. pointed toward her pelvic area. Fuss further testified that A.K. answered "yes" to questions inquiring whether her vagina was penetrated, whether a penis had penetrated her vaginally, and whether her rectum was penetrated by a penis. Evans raised a hearsay objection to the testimony that A.K. said her vagina was penetrated. The trial court overruled the objection after the prosecutor argued that the statement was an exception to the hearsay rule because it was made for the purpose of medical diagnosis and treatment. Evans did not object to any of the other statements. Fuss also testified that she observed injuries to A.K.'s vagina and rectum consistent with sexual assault and blunt force trauma.

While M.K. was testifying about what A.K. had told her on April 7, the trial court interrupted the testimony to ask defense counsel whether he had a strategic reason for not objecting to the hearsay testimony. Evans never objected, but instead answered in the affirmative when the trial court asked whether he would like for the trial court to admonish the jury that M.K.'s statements were not being offered to prove the truth of the matter asserted. The trial court, however, made no such admonishment because, following argument during jury instructions, the trial court determined that A.K.'s statements to her sister qualified as excited utterances and an exception to the hearsay rule under Indiana Rule of Evidence 803(2).

5

A.K. was brought to court and testified using her "yes" and "no" hand gestures. When asked, "The boy who took care of you, did you see him in court? Can you point to him?" Tr. p. 278. A.K. made a deliberate pointing motion to her left with her pointer finger extended. Video of Trial Test. of A.K. The State asked for the record to reflect that the witness identified Evans, but the trial court left it to the jurors to draw their own conclusion as to whether A.K. pointed to Evans.[3] Id. at 279. Then, A.K. testified that the "boy who took care of [her]," touched her in a way she did not like and put his penis into her vagina. Id. She also answered "yes" when asked whether she "told M.K. the truth." Id. at 278-82.

The jury found Evans guilty as charged. The trial court merged the sexual battery count into the other counts in light of double jeopardy concerns and entered a sentence on the remaining two convictions. Evans now appeals.

## DISCUSSION AND DECISION

### I. Hearsay

Evans argues that the trial court erred when it admitted certain testimony into evidence as exceptions to the hearsay rule. The admission and exclusion of evidence is a matter within the sound discretion of the trial court, and we will review only for an abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and

---

[3] When the State asked the trial court to have the record reflect that A.K. identified Evans, Evans objected to the identification. The trial court stated, "All right. We'll let the record speak for itself since its being video recorded and the jurors can draw their own conclusions. And the record being made by this video." Tr. p. 279.

circumstances presented. <u>Parts v. State</u>, 899 N.E.2d 714, 719 (Ind. Ct. App. 2009). If a trial court abuses its discretion by admitting the challenged evidence, we will only reverse if the error is inconsistent with substantial justice or if a substantial right of the party is affected. <u>In re S.W.</u>, 920 N.E.2d 783, 788 (Ind. Ct. App. 2010). Moreover, any error caused by the admission of evidence is harmless error, for which we will not reverse, if the erroneously admitted evidence was cumulative of other evidence properly admitted. <u>Id.</u>

### A. Statements to M.K.

Evans challenges the trial court's admission of A.K.'s statements to her sister pursuant to the excited utterance exception to the hearsay rule contained in Indiana Evidence Rule 803(2). Specifically, Evans argues that A.K.'s statements to her sister are not properly excited utterances because the State failed to present a clear record of the amount of time that elapsed between the rape and when A.K. reported the rape to M.K.

Initially, we note that Evans concedes that he has waived the issue, inasmuch as defense counsel failed to object to M.K.'s testimony. <u>See</u> <u>Brown v. State</u>, 783 N.E.2d 1121, 1125 (Ind. 2003) (holding that a contemporaneous objection at the time evidence is introduced at trial is required to preserve the issue for review). Accordingly, Evans attempts to circumvent waiver by alleging fundamental error. To be fundamental error, an error must "constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." <u>Mathews v. State</u>, 849 N.E.2d 578, 587 (Ind. 2006). In other words,

7

fundamental error is defined as an error so prejudicial to the rights of a defendant that a fair trial is rendered impossible. Id.

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless admitted pursuant to a recognized exception. Ind. Evidence Rule 802. In order for a hearsay statement to be admitted as an excited utterance, three elements must be present: (1) a startling event has occurred; (2) a statement made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event. Jones v. State, 800 N.E.2d 624, 627-28 (Ind. Ct. App. 2003). Application of this rule is not mechanical and admissibility should generally be determined on a case-by-case basis. Palacios v. State, 926 N.E.2d 1026, 1031 (Ind. Ct. App. 2010). The heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. Id. Although relevant, the amount of time that has passed between the event and the statement is not dispositive; rather, the focus is on whether the declarant was still under the stress of excitement caused by the startling event when she made the statement. Mathis v. State, 859 N.E.2d 1275, 1279 (Ind. Ct. App. 2007).

Here, the record reveals that Evans was in A.K.'s room with the door closed from approximately 9:00 to 9:30 a.m. M.K. testified that, when she arrived and A.K. told M.K she had been raped, she immediately reported that information to the on-duty nurse, who recalled talking to M.K. sometime around 5:00 p.m. Although the time between the

8

incident and A.K.'s statements to M.K. may have been in upwards of seven hours, it is certainly conceivable that A.K.'s physical limitations prolonged the stress of the rape committed by her caretaker. Unable to talk, A.K. could not communicate to anyone about what had occurred until her sister arrived. Unable to move, she remained in the same bed where she had been raped. When she made the statements to her sister, A.K.'s crying was "terrifying." Tr. p. 227. Under these facts and circumstances, the trial court could reasonably conclude that, despite the elapsed time, A.K.'s statements to M.K. were made while she was under the continuing stress of excitement caused by the rape. Therefore, the trial court did not commit error, let alone fundamental error, in admitting A.K.'s statement under the excited utterance exception to the hearsay rule.

### B. Statements to Sexual Assault Nurse Examiner

Evans next contends that the trial court erred when it admitted A.K.'s statements to sexual assault nurse examiner Fuss as statements for the purpose of medical diagnosis or treatment under Indiana Evidence Rule 803(4). Evans only objected to the admission of A.K.'s statement to Fuss that she was vaginally penetrated. He concedes that he failed to object specifically to her statement that she was rectally penetrated, and, like before, to the extent that he may have waived appellate review for failure to object, Evans argues fundamental error.

As we noted above, fundamental error is available only in cases of a "clearly blatant violation of basic and elementary principles, where the harm or potential for harm

9

cannot be denied." Mathews v. State, 849 N.E.2d at 587. This exception is available only in "egregious circumstances." Delarosa v. State, 938 N.E.2d 690, 694-95 (Ind. 2010).

We need not decide whether A.K.'s statements to Fuss were for the purposes of medical diagnosis or treatment and subject to an exception under the hearsay rule because the erroneous admission of inadmissible hearsay will not be cause for reversal if the evidence is merely cumulative in nature of other evidence that has been properly admitted. Weinberger v. Boyer, 956 N.E.2d 1095, 1106-07 (Ind. Ct. App. 2011). And here, Fuss's testimony is cumulative of A.K.'s unchallenged testimony and of M.K.'s testimony deemed admissible above. More particularly, Fuss testified that, during the examination at the hospital, A.K. stated that she was feeling pain in her pelvic area and indicated that her vagina had been penetrated, that it was penetrated by a penis, and that her rectum was penetrated by a penis. Tr. p. 102-05. A.K. testified in court that Evans touched her in a way she did not like and put his penis inside her vagina. Id. at 278-79, 281-82, 284. M.K. testified that A.K. signaled "yes" when asked whether it was one of her caretakers and whether that person was a man. Id. at 228. A.K. also indicated she had been touched in her vagina and "butt" and gestured "yes" when asked whether the person had put his penis into her vagina and "butt." Id. at 231, 234-35. Thus, even assuming that A.K.'s statements to Fuss are inadmissible hearsay, those statements were merely cumulative of the other evidence that was properly admitted.

In addition to the above, the State established that Evans was the only male to enter A.K.'s room and close the door that day. Id. at 67-68. Fuss found injuries to both

10

A.K.'s vagina and rectum that were consistent with blunt force trauma and sexual assault. Id. at 106-07. Forensic testing revealed seminal material and sperm on A.K.'s external genital swab, and the sperm cells in the external swab matched Evan's DNA profile to a reasonable degree of scientific certainty. Id. at 139, 172-74, 553-56.

In light of this evidence, even if we were to conclude that A.K.'s statements to Fuss were inadmissible hearsay, the remaining evidence of Evans's guilt was overwhelming and any error in admitting the statements that A.K. made to Fuss into evidence at trial was harmless error.

## II. Sufficiency of the Evidence

Evans argues that there was insufficient evidence to support his convictions for rape and criminal deviate conduct. Specifically, Evans contends that the State failed to present evidence that the A.K. was compelled to submit to rape or criminal deviate conduct by force or the threat of force.

When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Perez v. State, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007). We consider only the evidence favorable to the verdict and the inference therefrom. Id. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. Id.

To convict Evans of rape, the State was required to prove beyond a reasonable doubt that Evans knowingly or intentionally had sexual intercourse with A.K. when A.K. was compelled by force or imminent threat of force. Ind. Code § 35-42-4-1(a). To

11

convict Evans of criminal deviate conduct, the State was required to prove beyond a reasonable doubt that Evans knowingly or intentionally caused A.K. to perform or submit to deviate sexual conduct when A.K. was compelled by force or imminent threat of force. I.C. § 35-42-4-2(a). Deviate sexual conduct is defined in relevant part as an act involving a sex organ of one person and the mouth or anus of another person. I.C. § 35-41-1-9(1).

Evans's sole challenge is that the State failed to present sufficient evidence to prove that A.K. was compelled to submit to the sexual conduct by force or threat of force. In fact, he argues that there is no evidence that force or threat of force was utilized as "force or threat of force was not necessary to compel A.K. to submit to the conduct because she physically had no choice but to submit." Appellant's Br. p. 13. Evans also insinuates that the rape and criminal deviate conduct statutes afford A.K. no protection because A.K., having the mental capacity to consent, must have verbally or physically manifested signs of resistance. Appellant's Br. p. 14-15.

Contrary to Evans's assertions, compulsion by force or the threat of force is determined in light of the victim's perspective. Filice v. State, 886 N.E.2d 24, 37 (Ind. Ct. App. 2008). Thus, the issue is whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance. Id. The force need not be physical or violent, and the forcible compulsion may be inferred from the circumstances. Newbill v. State, 884 N.E.2d 383, 392 (Ind. Ct. App. 2008). Circumstances that render resistance impossible or unreasonable render issues of resistance moot; in other words,

that submission was compelled may be shown by evidence other than acts of resistance. Woodson v. State, 483 N.E.2d 62, 64 (Ind. 1985).

Here, A.K., because of her condition, was unable to physically or verbally resist. At trial, she testified that the "boy who took care of [her]," tr. p. 279, touched her in a way she did not like and put his penis into her vagina. Id. at 281. M.K. testified as to A.K.'s excited utterances that she had been touched in the "butt" and vagina. Id. at 227-31, 234-35. Fuss presented evidence of injuries to A.K.'s vagina and a rectal tear, both consistent with sexual assault and blunt force trauma. Id. at 106-07. In short, Evans's argument that this State's rape and criminal deviate conduct statutes offer no protection to those with physical limitations such that they cannot resist are without merit and unavailing. Therefore, we conclude that the evidence is sufficient to show forcible compulsion in accordance Indiana Code sections 35-42-4-1(a) and 2(a) and support Evans's convictions for rape and criminal deviate conduct.

The judgment of the trial court is affirmed.

DARDEN, J., and BAILEY, J., concur.

13