**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DONALD J. EVANS**
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN K. COTTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 64A03-1107-CR-334 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable William E. Alexa, Judge
Cause No. 64D02-0911-FA-12164

**March 27, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Defendant, Kevin K. Cotton (Cotton), appeals his conviction and sentence for two Counts of child molesting, Class C felonies, Ind. Code § 35-42-4-3(b).

We affirm.

ISSUES

Cotton raises three issues on appeal, two of which we find dispositive and which we restate as follows:

(1) Whether the State produced sufficient evidence to prove beyond a reasonable doubt that he committed child molesting; and

(2) Whether the trial court's sentence was appropriate in light of the nature of his offense and his character.

FACTS AND PROCEDURAL HISTORY

Cotton and C.R. (Mother) are the biological parents of A.R., who was twelve years old at the time of trial, and B.R., who was ten years old at the time of trial. Cotton was never married to Mother and did not have legal visitation rights with A.R. and B.R., although A.R. and B.R. stayed with Cotton approximately every other weekend between 2004 and 2009 through an unofficial arrangement between their parents.

In late April or early May of 2009, A.R.'s friend A.F. spent the night with A.R. at Cotton's house. That evening, the two girls took a bath together, and A.R. told A.F. to keep her bra and underwear on in case Cotton came into the bathroom. While they were

2

in the bathtub, Cotton came into the room, took off his clothes, and asked if he could join them. Subsequently, he left the bathroom, but he only did so at A.R.'s insistence.

Two weeks later, A.F. again spent the night with A.R. at Cotton's house. A.F. and A.R. were on the couch watching television when Cotton grabbed some pebbles that were decorating a nearby candle and put them down his pants. He told A.R. to get them out, but she refused to do so. Cotton took the pebbles out of his pants himself but then grabbed either his cigarette or a lighter and told A.F. to "follow the light" as he circled it around his penis, which was hanging out of his pants. (Transcript p. 224). A.R. told Cotton to leave, and he went into the bedroom where B.R. was sleeping. B.R. woke to find Cotton touching her with his penis between her legs. She told Cotton that she needed to use the bathroom and then she spent the remainder of the night on the couch with A.R. and A.F.

That same weekend, Cotton took A.R.'s stuffed animal named "Chuck" and rubbed his penis against it while wearing his clothes, saying that he was going to "'F[***] Chuck.'" (Tr. p. 144). Cotton then asked A.R. to "come be Chuck." (Tr. p. 225). A.R. refused, so Cotton told B.R. to "come be Chuck." (Tr. p. 225). Cotton tickled and "hump[ed]" both A.R. and B.R. while they had their clothes on, then tickled A.F. and tried to "hump" her, too. (Tr. p. 143). In response, A.F. told him not to touch her, kicked him, and ran out of the room.

After this second sleepover, Cotton told Mother that he did not want A.F. spending the night at his house anymore. Mother told A.F.'s father what Cotton had said, and on

June 21, 2009, A.F.'s father discussed the issue with Cotton because he was worried that A.F. was misbehaving. A.F.'s father became suspicious when Cotton told him that it had "nothing to do with [A.F.]." (Tr. p. 178). As a result, he asked A.F. if she had ever done anything that would cause Cotton to ask her not to visit, and she told him that she had not. He also asked her if anything strange had ever happened at Cotton's house, and A.F. told him about the events of her two sleepovers. After hearing her account, A.F.'s father called Mother and told her what A.F. had revealed to him. Together, A.F.'s father and Mother took A.F., A.R., and B.R. to the Porter County Police Department and reported the incidents.

On November 30, 2009, the State filed an Information charging Cotton with two Counts of child molesting as Class A felonies, I.C. § 35-42-4-3(a)(1), and three Counts of child molesting as Class C felonies, I.C. § 35-42-4-3(b). That same day, the State also filed an Information charging Cotton with being a repeat sexual offender, I.C. § 35-50-2-14. On May 3-4, 2011, a jury trial was held. At trial, A.R. testified that over the years of visiting her father, he had touched her private parts with his fingers on multiple occasions, touched her breasts, and made her rub his penis. She also testified that on occasions Cotton had attempted to penetrate her vagina and anus with his penis and finger, but had stopped when she told him that it hurt. Similarly, B.R. testified that on multiple occasions, Cotton had touched her private parts, made her rub his penis, and rubbed his penis between her legs. At the conclusion of the evidence, the jury found

4

Cotton guilty of two Counts of child molesting as Class C felonies and of being a repeat sex offender, but not guilty of the remaining charges.

On June 3, 2011, the trial court held a sentencing hearing and sentenced Cotton to eight years for each of his convictions for child molesting and four years for being a repeat sex offender, with sentences to be served consecutively, for an aggregate sentence of twenty years executed. As aggravating circumstances, the trial court noted that: (1) Cotton had an extensive criminal history; (2) the victims were less than 12 years of age at the time the offenses were committed; (3) Cotton had recently violated conditions of his probation in at least three separate cases; and (4) Cotton was in the position of having the care, custody, and control of the victims. The trial court did not find any mitigating circumstances.

Cotton now appeals. Additional facts will be provided as necessary.

## DISCUSSION

### I. *Sufficiency of the Evidence*

On appeal, Cotton argues that the State did not present sufficient evidence to prove beyond a reasonable doubt that he committed the child molesting offenses. When reviewing a sufficiency of evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 213 (Ind. Ct. App. 2007), *trans. denied.* In addition, we only consider the evidence most favorable to the verdict and reasonable inferences stemming from that evidence. *Id.* We will only reverse

a conviction when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.* at 212-13.

In order to establish that Cotton committed child molesting as a Class C felony, the State was required to prove beyond a reasonable doubt that he "with a child under fourteen (14) years of age, perform[ed] or submit[ted] to any fondling or touching, of either the child or [himself], with intent to arouse or to satisfy the sexual desires of either the child or [himself]." I.C. § 35-42-4-3(b). Mere touching alone is not sufficient to constitute the crime of child molesting. *Davis v. State,* 956 N.E.2d 726, 730 (Ind. Ct. App. 2011). The State must also prove beyond a reasonable doubt that the act of touching was accompanied by the specific intent to arouse or satisfy sexual desires. *Id.* The intent element may be established by circumstantial evidence and inferred "from the actor's conduct and the natural and usual sequence to which such conduct usually points." *Id.* (quoting *Pedrick v. State,* 593 N.E.2d 1213, 1220 (Ind. Ct. App. 1992), *reh'g denied*).

Cotton does not clearly develop his argument concerning this issue, but essentially asserts that because the jury acquitted him of his Class A felony charges, which were based on the same underlying facts as his Class C felony charges, there was not sufficient evidence for the jury to convict him of his Class C felony charges either. Preliminarily, we note that inconsistent jury verdicts are not subject to appellate review. *Beattie v. State,* 924 N.E.2d 643, 649 (Ind. 2010). The supreme court has previously commented that "[w]hen a jury returns logically inconsistent verdicts, such a result could mean that it

6

misunderstood its instructions. But it is more likely that the jury chose to exercise lenity, refusing to find the defendant guilty of one or more additionally charged offenses, even if such charges were adequately proven by the evidence. Such right of a criminal jury to decline to convict is well recognized." *Id.* at 648. In other words, an acquittal of one charge does not necessarily mean that there is insufficient evidence to support a conviction on a related charge. *See id.* Accordingly, "[t]he evaluation of whether a conviction is supported by sufficient evidence is independent from and irrelevant to the assessment of whether two verdicts are contradictory and irreconcilable." *Id.* Thus, we will examine the sufficiency of the evidence supporting Cotton's Class C child molesting convictions independently from his Class A charges.

Here, both of Cotton's victims were under fourteen years of age, and they both testified that Cotton rubbed his fingers on their private areas, rubbed his penis between their legs and made them place their hands on his penis and rub it until "white stuff [came] out." (Tr. p. 255). A.R. also testified that on separate occasions Cotton attempted to insert his finger and penis into her vagina and anus and only stopped when she protested that it hurt. In light of such testimony, we conclude that the State presented sufficient evidence to prove that Cotton fondled and touched children under the age of fourteen and did so to satisfy his sexual desires. Thus, there was sufficient evidence to support his convictions for child molestation.

II. *Nature of the Offense and Character of the Offender*

7

Next, Cotton argues that the trial court inappropriately sentenced him in light of the nature of his offense and his character. Under Indiana Appellate Rule 7(B), this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Childress v. State,* 848 N.E.2d 1073, 1079-80 (Ind. 2006). Although this court is not required to use "great restraint," we nevertheless exercise deference to a trial court's sentencing decision, both because Appellate Rule 7(B) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State,* 866 N.E.2d 858, 865-66 (Ind. Ct. App. 2007). The "principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

We recognize that the sentencing range for a Class C felony is two years to eight years, with an advisory sentence of four years. I.C. § 35-30-2-6. In addition, the trial court may sentence a defendant found to be a repeat sexual offender to "a fixed term that is the advisory sentence for the underlying offense." I.C. § 35-50-2-14. As the trial court sentenced Cotton to eight years for each of his Class C felony Counts, as well as four years for being a repeat sexual offender, it sentenced him to the maximum possible statutory penalty for his offenses.

With respect to the nature of Cotton's offense, we note that Cotton molested his daughters over a lengthy period of time, starting when they were very young. A.R., for instance, was in second grade when Cotton first molested her. In addition, these molestations occurred during Cotton's visits with his daughters when he was in the position of having their care, custody, control, and trust. Finally, Cotton threatened his daughters not to tell about the abuse, stating that he would "hurt [them] and [their] family]" and would "take [them] away from [their] mom." (Tr. p. 60). Cotton told B.R. never to tell about the molestations because he would go to jail and she would never be able to see him. In light of these circumstances, we find that the trial court did not misjudge that the nature of Cotton's offense justified the maximum statutory sentence.

With respect to Cotton's character, it is clear from his criminal history that he has very little respect for the law. Cotton has prior felony convictions for sexual battery and resisting law enforcement, as well as ten misdemeanor convictions for consuming alcohol as a minor, battery, operating while intoxicated, resisting law enforcement, and carrying a handgun without a license, among others, and multiple probation violations. Cotton argues that much of the information provided in the pre-sentence investigation report (PSI) was out of date because it was taken from a 2005 PSI, but he admitted at the sentencing hearing that the information in the PSI was correct and that no changes, corrections, or additions needed to be made. In addition, we find it especially significant that this is not Cotton's first sexual offense, and the victim of his prior sexual battery

offense was also a girl under the age of fourteen. Accordingly, we determine that the trial court also appropriately sentenced Cotton in light of his character.[1]

## CONCLUSION

Based on the foregoing, we conclude that (1) the State produced sufficient evidence to prove beyond a reasonable doubt that Cotton committed two Counts of child molesting as Class C felonies; and (2) the trial court properly sentenced Cotton in light of the nature of his offense and his character.

Affirmed.

FRIEDLANDER, J. and MATHIAS, J. concur

---

[1] Cotton also asserts that the trial court failed to consider his history of drug and alcohol abuse; family history of molestation; and prescription for psychotropic drugs as mitigating factors when it sentenced him. However, Cotton does not support his argument with citations to any legal authorities or to the parts of the Record on which he relies, as required by Ind.Appellate Rule 46(A)(8)(a). He also failed to raise these issues at sentencing and is thus precluded from raising them on appeal. *See Anglemyer v. State,* 868 N.E.2d 482, 492 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (2007). Therefore, we deem his argument waived.