**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 17 2012, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY CROSS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1109-CR-442 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1104-FB-13

**May 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Anthony J. Cross (Cross), appeals his conviction for robbery while armed with a deadly weapon, a Class B felony, Ind. Code § 35-42-5-1(2).

We affirm.

## ISSUES

Cross raises three issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion when it allowed a victim to make an in-court identification of Cross;

(2) Whether the State presented sufficient evidence beyond a reasonable doubt to sustain Cross' conviction; and

(3) Whether Cross' sentence was appropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

During the night of May 8, 2010, David Beggs (Beggs) was working at the 7-Eleven Store in Elkhart, Indiana, which was owned by Mohammed Tannir (Tannir). Around midnight, a man entered the store, wearing a Chicago Bulls hoodie, and asked Beggs, "hey, is fat ass here?" (Transcript p. 428). Beggs understood that he was enquiring after one of Beggs' co-workers who fit that description. As this particular co-worker was not working that night, the man left the store.

At around 2 a.m., Beggs took out the trash to a dumpster behind the store. When Beggs returned to the store, a man, later identified as Cross, walked up behind him and

2

pointed a gun at the back of his head. Cross followed Beggs inside the store and demanded the money from the cash register. Beggs obeyed, opened the drawer, and gave him the forty dollars that was inside. Tannir's twelve year old son, R.T., who was in the store that night, was standing about a foot away. Tannir was in the back room during the robbery.

Inside, Beggs got a "good look" at Cross' face and noticed that he had a goatee and was wearing a Chicago Bulls hoodie. (Tr. p. 427). Beggs recognized him from the encounter earlier in the evening. R.T. gave a similar description of Cross and added that the expression on Cross' face was scary, "like he was mad at something." (Tr. p. 389).

After Beggs handed over the money, Cross ran away. R.T. informed his father what had just happened. When the police officers arrived, Beggs described Cross as "kind of tall. He was wearing a Bulls jacket. He had a goatee and kind of like had an egg shaped head." (Tr. p. 430). Neither Beggs nor R.T. knew Cross' name. A police evidence technician took photographs of the scene and attempted to collect any fingerprints but was unable to locate any prints that would be helpful in identifying the robbery suspect. Although a police officer reviewed the surveillance video from the robbery, no information could be discerned that would lead to the perpetrator.

Approximately two weeks after the robbery, when R.T. was again helping his father at the store, Cross walked into the store. As he went to the microwave, R.T. recognized him as the robbery suspect. Although Cross' hair was different from the first time and he was wearing different clothes, R.T. was able to identify him because of the way Cross looked at R.T. and the way something changed in his face when Cross noticed

3

R.T. When Cross left the store, R.T. notified his father. Tannir called the police and told them what had happened.

Corporal James Wrathall of the Elkhart Police Department (Officer Wrathall) responded to the call. Tannir and Officer Wrathall reviewed the surveillance video and Officer Wrathall recognized the suspect as Cross. Officer Wrathall knew Cross from the neighborhood and had many conversations and "run-ins" with him in the past. (Tr. p. 347). After Officer Wrathall identified the robbery suspect as Cross, Detective Scott Weaver with the Elkhart Police Department (Officer Weaver) compiled a photo lineup for the witnesses. When putting the array together, he switched the order of the photos so there would no tainting from Beggs to R.T. Both Beggs and R.T. recognized Cross as the individual who had robbed the 7-Eleven store.

On April 15, 2011, the State filed an Information charging Cross with robbery while armed with a deadly weapon. On August 1-2, 2011, a jury trial was held. On the second day of trial and prior to the entry of the jury, Cross sought to "preserve the record . . . in the event that there would be [an] appellate issue[.]" (Tr. p. 312). Cross elicited testimony from a courtroom deputy, Officer Dave Kirk (Officer Kirk), who was present in the courtroom when the State brought R.T. into the courtroom to familiarize himself with the jury box and the witness stand. Officer Kirk testified that he saw R.T. "make eye contact with Cross." (Tr. p. 310). He added that he "[a]bsolutely [did] not" see the State single out Cross. (Tr. p. 310). Officer Kirk clarified that it did appear that the State was assisting a juvenile in understanding the set-up of the courtroom to reduce his anxiety before he was called to the stand. When asked for a response, the State stated

4

that "Officer Kirk pretty much explained even my side of the story without even knowing what I was intending to do at the time. It is pretty clear that by my actions he understood exactly what was going on." (Tr. p. 313). The State assured the trial court that it had made no suggestion that Cross was already present in the courtroom "or that his existence matter[ed] . . . [R.T.] ha[d] absolutely no idea, and it certainly was not pointed out to him." (Tr. p. 313). After making the record, Cross added that he did not know what the proper remedy would be but noted that if R.T. "is somehow aided in his identification by the fact that this is the only black male in the courtroom, that might be a problem down the road, and . . . I think that's the real concern here." (Tr. p. 316). The trial court stated that it could not predict whether the State would ask R.T. to identify Cross, but affirmed its belief that Cross was "capable at cross-examination" and would be able to cross-examine R.T. (Tr. p. 320). Cross reassured the trial court that he "[would] accept that challenge" and added that "well, we'll find out whether it works or not, but . . . I am here for the challenge." (Tr. p. 320). After a brief conference between Cross and his counsel, they decided not to conduct any prehearing questioning of R.T.

At the close of the evidence, the jury found Cross guilty as charged. On September 1, 2011, the trial court sentenced Cross to an aggravated, executed sentence of twenty years.

Cross now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *In-Court Identification*

5

First, Cross contends that the trial court abused its discretion when it admitted R.T.'s identification of Cross, as the perpetrator of the robbery, into evidence. However, because Cross failed to object to R.T.'s in-court identification, the claim of error is waived for our review. Ind. Evidence Rule 103(a). Even if we were to address Cross' argument, we still cannot proceed. The record clearly indicates that the State never asked R.T. to identify Cross; rather, during cross-examination, Cross asked R.T. to make an in-court identification. Thus, as Cross invited the error of which he now complains, he cannot object to it. *See Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005) (Pursuant to the doctrine of invited error, a party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct).

## II. *Sufficiency of the Evidence*

Cross argues that the State failed to present sufficient evidence beyond a reasonable doubt to convict him of robbery while armed with a deadly weapon. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 212-23 (Ind. Ct. App. 2007), *trans. denied*. We will consider only the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* at 213. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

To convict Cross of robbery while armed with a deadly weapon, a Class B felony, the State was required to establish that Cross knowingly or intentionally took property

6

from the 7-Eleven by putting a person in fear and while armed with a deadly weapon. *See* I.C. § 35-42-5-1. Specifically, Cross attempts to cast doubt on Beggs' and R.T.'s identification of him as the perpetrator by noting that neither of them could identify Cross on the night of the robbery.

We conclude that the State presented sufficient evidence to sustain Cross' conviction. While Beggs and R.T. were unable to give police officers a specific name on the night of the robbery, they did provide the officers' with facial features and clothing. About two weeks later, after R.T. recognized Cross when he entered the 7-Eleven again, the police were able to identify Cross from the surveillance video. Both Beggs and R.T. immediately recognized Cross from a photo array. Insofar as Cross now requests this court to reweigh the credibility of these witnesses, we decline the invitation. *See Perez*, 872 N.E.2d at 212-23.

### III. *Sentence*

Cross contends that the trial court abused its discretion when it imposed a twenty year executed sentence for his conviction for robbery while armed with a deadly weapon, a Class B felony. A person who commits a Class B felony shall be imprisoned for a fixed term of between six and twenty years, with the advisory sentence being ten years. I.C. § 35-50-2-5. Here, the trial court imposed the maximum sentence under the statute.

As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *aff'd on reh'g,* 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the

7

reasonable, probable, and actual deductions to be drawn therefrom. *Id*. Although a trial court may have acted within its lawful discretion in determining a sentence, Appellate Rule 7(B) provides that the appellate court may revise a sentence authorized by statute if the appellate court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Id*. On appeal, it is the defendant's burden to persuade us that the sentence imposed by the trial court is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

With respect to the nature of the crime, it should be noted that Cross threatened Beggs by holding a handgun to the back of Beggs' head, and demanded Beggs to give him the money that was in the cash register. Beggs became so traumatized that he quit his position shortly after the robbery. Although no one was hurt, the robbery occurred in the presence of a minor.

Turning to Cross' character, we note that Cross has an extensive criminal history. His criminal record lists six felony convictions—mainly for possession and sale of controlled substances—seven misdemeanor convictions, two parole violations, and five failures to appear. His presentence investigation report shows approximately thirty arrests. During sentencing, the trial court pointed out that Cross committed the instant offense while on probation. In sum, despite previous attempts at rehabilitation, Cross has persisted in leading a life of crime, disobeying the laws of this State. We find the trial court's sentence appropriate.

## CONCLUSION

Based on the foregoing, we conclude that (1) Cross waived his argument with respect to the victim's in-court identification; (2) the State presented sufficient evidence beyond a reasonable doubt to sustain Cross' conviction; and (3) Cross' sentence was not inappropriate in light of the nature of the offense and his character.

Affirmed.

NAJAM, J. and DARDEN, J. concur