**Oscar Eduardo PEREZ, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 20A04–0701–CR–39.

Court of Appeals of Indiana.

Aug. 24, 2007.

Kenneth R. Martin, Goshen, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Oscar Eduardo Perez (Perez), appeals his conviction for attempted murder, a Class A felony, Ind. Code §§ 35–41–5–1; 35–42–1–1.

We affirm.

### ISSUES

Perez raises two issues on appeal, which we restate as follows:

(1) Whether the trial court properly instructed the jury; and

(2) Whether the State presented sufficient evidence to prove beyond a reasonable doubt that he committed attempted murder.

## FACTS AND PROCEDURAL HISTORY

On February 18, 2006, Perez and others affiliated with a gang known as the Nortenos went to an under twenty-one-year-old night club in Goshen, Indiana. At the club, the Nortenos got into a confrontation with a rival gang, the Surenos. Police officers came to disperse the group. Perez left the club and headed north on U.S. 33, riding in a red Acura with his brother driving. A group of the Nortenos traveled along with the Acura, riding separately in a grey Durango.

While driving on U.S. 33, the Nortenos encountered a group of Surenos riding in a tan Malibu. The Nortenos in the Durango and the Surenos flashed gang signs at each other and at some point a passenger in the Durango fired a paintball gun several times at the Malibu. The Malibu swerved, came up behind the Durango, and rammed it from behind. Perez, riding in the Acura just behind and to the side of the Malibu, grabbed his SKS assault rifle and fired three to five shots out of the window at the Malibu. The Malibu then drifted off the road.

The Nortenos drove on to a residence where Perez dismantled the gun, hid part of it, and left with the remaining parts. Later, Perez returned and bragged that he fired at the Malibu and was certain he had hit it.

Fourteen-year-old Rogelio Reyes, who was riding in the tan Malibu, was hit in the eye by one of the shots. The bullet then passed through the left side of his brain, causing his death. Saul Rodriguez, who was driving the Malibu, was also hit by one of the bullets, and was seriously wounded.

On February 3, 2006, the State filed an Information charging Perez with murder, a felony, I.C. § 35–42–1–1, and criminal gang activity, a Class D felony, I.C. 35–45–9–3. On August 31, 2006, the State filed an amended Information, adding the charge of attempted murder, a Class A felony, I.C. §§ 35–41–5–1, 35–42–1–1, to the aforementioned charges. On September 18, 2006, a jury trial in the matter commenced, and on September 21, the jury found Perez guilty of all charges.

Perez now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Jury Instructions*

■ Perez contends that the trial court improperly instructed the jury. Specifically, Perez contends that in Final Instruction 2, the trial court read to the jury the charges facing him, and in its reading of the charge for attempted murder, the trial court used the word *knowingly,* thereby confusing the jury as to the appropriate *mens rea* standard for that crime.

■ It is well established by our court that instructing the jury is within the discretion of the trial court. *White v. State,* 846 N.E.2d 1026, 1032 (Ind.Ct.App. 2006), *trans. denied.* Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Id.*

■ A timely objection is generally required to preserve an issue for appeal. *Id.* Perez does not deny that he failed to object to the proffered instruction; nonetheless, he claims the error is fundamental, and therefore subject to our review.

■ Fundamental error is defined as an error so prejudicial to the rights of a defendant that a fair trial is rendered impossible. *Id.* To be considered fundamental, an error "must constitute a blatant violation of basic principles, the harm, or potential for harm must be substantial,

and the resulting error must deny the defendant fundamental due process." *Spears v. State*, 811 N.E.2d 485, 488 (Ind. Ct.App.2004).

█ Typically, the culpability requirement for the attempt of a crime is that of the specific crime attempted. I.C. § 35–41–5–1. However, our supreme court has emphasized the importance of requiring specific intent to kill before a defendant can be convicted of attempted murder, despite that the culpability requirement for murder includes the lesser standard of "knowingly." *Booker v. State*, 741 N.E.2d 748, 751 (Ind.Ct.App.2000) (citing *Zickefoose v. State*, 270 Ind. 618, 388 N.E.2d 507 (Ind.1979)). Thus, it is reversible error for a trial court to instruct a jury that a "knowing" *mens rea* is sufficient to establish guilt of attempted murder. *Booker*, 741 N.E.2d at 751 (citing *Williams v. State*, 737 N.E.2d 734, 736 (Ind.2000)). This principle has become known as the "*Spradlin* rule," named after the judicial opinion which explained, "[h]enceforth ... an instruction which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing." *Spradlin v. State*, 569 N.E.2d 948, 950 (Ind.1991).

█ Nevertheless, our supreme court has clarified that attempted murder convictions need not be vacated despite a clear *Spradlin* rule violation when: (1) the intent of the defendant was not a central issue at trial; (2) the instructions as a whole sufficiently suggested the requirement of the intent to kill; or (3) both. *Williams*, 737 N.E.2d at 737. Indeed, cases where no fundamental error was found despite the mention of a "knowing"

*mens rea* requirement include: *Ramsey v. State*, 723 N.E.2d 869 (Ind.2000); *Greenlee v. State*, 655 N.E.2d 488 (Ind.1995); *Price v. State*, 591 N.E.2d 1027 (Ind.1992); *Means v. State*, 807 N.E.2d 776 (Ind.Ct. App.2004); *Clay v. State*, 766 N.E.2d 33 (Ind.Ct.App.2002); *Booker v. State*, 741 N.E.2d 748 (Ind.Ct.App.2000). However, where intent was a contested issue and/or the instructions did not sufficiently inform the jury on specific intent, the error may rise to the level of fundamental. *Jones v. State*, 868 N.E.2d 1205, 1210 (Ind.Ct.App. 2007).

In reviewing the record before us here, we find that the jury instructions contained a *Spradlin* rule violation. Perez contends, and the State does not dispute, that intent was a contested issue at trial; therefore, our analysis focuses on whether the jury instructions as a whole sufficiently suggested the requirement of intent to kill as a part of attempted murder.

The trial court stated to the jury during final instructions:

In this case the State of Indiana has charged the defendant with Count I, Murder, a felony; Count II, Criminal Gang Activity, a[C]lass D felony; and Count III, Attempted Murder, a[C]lass A felony. The charges read as follows:
\* \* \*

"Count III: The undersigned affiant swears that on or about the 19th day of February, 2006, at the county of Elkhart and [S]tate of Indiana, Oscar Edwardo [sic] Perez *did knowingly attempt to kill* another human being, to wit: Saul Rodriguez with a dangerous and deadly weapon, to wit: a firearm, all of which conduct constitutes a substantial step towards the crime of murder; all of which is contrary to the form of Indiana Code section 35–42–1–1 and Indiana Code section 35–41–5–1; contrary to the form of the

statute in such cases made and provided; and against the peace and dignity of the State of Indiana."

(Transcript p. 976) (*emphasis added*). Although this mention of knowing culpability was expressed to the jury as being a part of the charges filed by the State, we conclude that when read by the trial court amongst other jury instructions, this erroneous statement of the law can be considered an improper jury instruction which may rise to fundamental error if not cured by appropriate jury instructions. *See Price v. State,* 591 N.E.2d 1027 (Ind.1992) (concluding conversely that reading of charging information which correctly included intent to kill as an element of attempted murder along with trial court instruction stating the incorrect "knowing" culpability standard was not fundamental error).

Nevertheless, moments later the trial court instructed the jury properly regarding the required culpability for attempted murder by stating:

The crime of attempted murder is defined as follows:

A person attempts to commit murder when, *acting with the specific intent to kill another person,* he engages in conduct that constitutes a substantial step toward killing that person.

Before you may convict the defendant of attempted murder, the state must have proved each of the follow[ing] elements beyond a reasonable doubt:

1. the defendant, Oscar Edwardo [sic] Perez

2. *acting with specific intent to kill Saul Rodriguez*

3. did discharge a deadly weapon, to wit: a loaded firearm at Saul Rodriguez

4. which was conduct constituting a substantial step toward commission

of the intended crime of killing Saul Rodriguez.

If the [S]tate failed to prove each of these elements beyond a reasonable doubt, you must find the defendant not guilty of the crime of attempted murder, [a][C]lass A felony, charged in Count III.

(Tr. pp. 980–981) (*emphasis added*).

We find when reviewing the jury instructions as a whole that the jury instructions sufficiently suggested the requirement of intent to kill. First, we note that the violative language came from the charges filed by the State against Perez, and was expressed to the jury as being such. We find that when the trial court thereafter instructed the jury using its own words and spoke in absolute terms, the erroneous expression was outweighed by the correct statement of the required standard. Additionally, the trial court's instruction explaining the elements of attempted murder contained *two* admonitions that "specific intent to kill" was required. (Tr. p. 980). The repetitive quality of the trial court's correct instruction on the requirement of intent to kill further aides in curing the *Spradlin* error. *See Greenlee,* 655 N.E.2d at 492. Because the trial court's instructions sufficiently suggested the requirement of intent to kill, we conclude that the trial court did not commit fundamental error.

## II. Sufficiency of the Evidence

■ Perez contends that the State failed to present sufficient evidence to sustain his conviction for attempted murder. Specifically, he contends the State failed to prove beyond a reasonable doubt that he intended to kill Rodriguez when he shot and wounded him.

■■■ Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence

claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Agilera v. State*, 862 N.E.2d 298, 306 (Ind.Ct.App.2007). We will consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* A conviction may be based upon circumstantial evidence alone. *Id.* Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Abney v. State*, 822 N.E.2d 260, 264 (Ind.Ct.App.2005).

As discussed above, intent to kill is a required element of attempted murder. *Booker*, 741 N.E.2d at 751. Our courts have repeatedly recognized the difficulty in ascertaining whether there was intent to kill in attempted murder cases. *See i.e. Patton v. State*, 810 N.E.2d 690 (Ind.2004) (finding no evidence of intent to kill from facts including close range shot from a shotgun); *Richeson v. State*, 704 N.E.2d 1008, 1010 (Ind.1998) (discussing the "intent ambiguity" caused by the distance between the perpetrator and victim in many attempted murder cases); and *Howse v. State*, 672 N.E.2d 441, 445 (Ind. Ct.App.1996) *trans. denied*, Sullivan, J. dissenting (explaining that the cases relied upon by the majority "did not involve the relative complexity inherent in the crime of attempted murder"). All the same, upon review of the record, we find substantial evidence supporting the conclusion that Perez's conscious objective was to kill when he fired at the tan Malibu.

First, Perez directs our attention to evidence that the car Perez was shooting from was quite some distance from the victims at the time of the shooting in order to support his argument of lack of intent to kill. Reviewing the record, we note that the evidence consistently showed the cars involved in the incident, the Durango, the Malibu, and the Acura were traveling along the road in the order in which they are listed here. Two witnesses traveling in the Durango believed that shots were fired from the Malibu, instead of from the Acura. One of those witnesses testified that the shots were so loud they made her ears ring. Another passenger in the Durango characterized the Acura as being a "little bit behind the [Malibu]." (Tr. p. 702). Further, a passenger in the Acura testified that the Malibu was approximately as far from the Acura at the time of the shooting as he was sitting from certain chairs in the courtroom as he testified. Finally, Perez testified that he could see the gang signs that the passengers of the Malibu were making with their hands just prior to his shooting. Contrary to Perez's contention, we conclude that the jury could have found he was not far from Rodriguez at the time of the shooting and reasonably inferred intent to kill when considering the other evidence.

Secondly, Perez points to evidence that he had difficulty seeing the persons in the Malibu and aiming the gun, attempting to further attack the inference that he acted with intent to kill. We note again, however, that he testified he could see the gang signs displayed by the persons in the Malibu, which supports a finding that he could see the victims. Moreover, the testimony at trial was that he fired between three and five shots from an assault rifle, one handed, while traveling at a high rate of speed at night. Two of those shots hit persons in the Malibu, one of those shots being fatal. "Intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury." *Corbin v. State*, 840 N.E.2d 424, 429 (Ind.Ct.App.2006). "[D]ischarging a weapon in the direction of

a victim is substantial evidence from which the jury could infer intent to kill." *Id.* (citing *Leon v. State,* 525 N.E.2d 331, 332 (Ind.1988)). Perez firing a gun at the passengers inside the tan Malibu, especially when considering his accuracy despite various impediments, is substantial evidence that Perez intended to kill the victims.

Finally, while reviewing the record, we note that Perez was found guilty of criminal gang activity for his actions during the shooting, and that the victims were rival gang members. Intent to kill may be inferred from the nature of the attack and circumstances surrounding the crime. *Corbin,* 840 N.E.2d at 429 (citing *Gall v. State,* 811 N.E.2d 969, 975 (Ind.Ct.App. 2004) *trans. denied* ). We conclude that the gang involvement of both Perez and the victims, and the evidence of an ongoing altercation predicated upon rival gang hostilities, is also substantial evidence that Perez intended to kill Rodriguez.

### CONCLUSION

Based on the foregoing, we conclude that (1) the trial court properly instructed the jury that intent to kill was a required element of attempted murder, and (2) the State presented sufficient evidence to sustain Perez's conviction for attempted murder.

Affirmed.

SHARPNACK, J., and FRIEDLANDER, J., concur.