**Joseph K. ALVIES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0804–CR–224.

Court of Appeals of Indiana.

Nov. 5, 2008.

Timothy J. Burns, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Joseph K. Alvies (Alvies), appeals his conviction for panhandling, a Class C misdemeanor, Ind.Code § 35–45–17–2.

We affirm.

### ISSUE

Alvies raises one issue on appeal, which we restate as follows: Whether the State presented sufficient evidence to support Alvies' conviction of panhandling beyond a reasonable doubt.

### FACTS AND PROCEDURAL HISTORY

The facts favorable to the judgment are as follows. On October 8, 2007, Indianapolis Metropolitan Police Officer Joshua Shaughnessy (Officer Shaughnessy) was assigned to the downtown area in response to complaints about aggressive panhandling. He was working in plain clothes. Around 10:15 p.m., Officer Shaughnessy

walked northbound near Illinois and Maryland Streets. Alvies stepped in front of the Officer and initiated the conversation by inquiring if Officer Shaughnessy "could help him out." (Transcript p. 8). While Officer Shaughnessy continued walking northbound, Alvies walked alongside and behind him. Officer Shaughnessy asked what Alvies meant by helping him out, and Alvies responded that "he wanted seven or eight dollars so he could get a room at the Atlas Hotel." (Tr. p. 9). When Officer Shaughnessy informed Alvies that he did not have any money, Alvies followed him and continued to solicit money from the Officer. Eventually, Alvies abandoned his attempts and started walking in the other direction. Officer Shaughnessy contacted another officer and requested him to arrest Alvies.

On October 8, 2007, the State filed an Information, charging Alvies with Panhandling, a Class C misdemeanor, I.C. § 35–45–17–2. On March 18, 2008, a bench trial was conducted. At the close of the evidence, the trial court found Alvies guilty as charged. That same day, the trial court sentenced him to sixty days, with four days credit and with the remaining balance of the sentence suspended. Additionally, the trial court ordered Alvies to avoid the area of Illinois and Maryland Streets during this sixty-day period.

Alvies now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Alvies contends that the State failed to present sufficient evidence to support his conviction of panhandling beyond a reasonable doubt. Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 212–13 (Ind.Ct.App.2007), *trans. denied.* We will consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* at 213. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

Laws targeting street begging have been around for many years, but in the last twenty years, communities have tried to narrowly draw ordinances to target the most bothersome types of street solicitations and give police another tool in their effort to make public areas, particularly downtown areas, safe and inviting. *See, e.g., Gresham v. Peterson*, 225 F.3d 899, 909 (7th Cir.2000). Indiana's panhandling statute is encompassed in I.C. § 35–45–17–1 which defines panhandling as

(a) [ ] solicit[ing] an individual:

(1) on a street or in another public place; and

(2) by requesting an immediate donation of money or something else of value.

(b) The terms includes soliciting an individual:

(1) by making an oral request;

(2) in exchange for:

(A) performing music;

(B) singing; or

(C) engaging in another type of performance; or

(3) by offering the individual an item of little or no monetary value in ex-

change for money or another gratuity under circumstances that would cause a reasonable individual to understand that the transaction is only a donation.

(c) The term does not include an act of passively standing, sitting, performing music, singing or engaging in another type of performance:

(1) while displaying a sign or other indication that a donation is being sought; and

(2) without making an oral request other than in response to an inquiry by another person.

A person panhandles, a Class C misdemeanor, when he knowingly or intentionally does any of the following:

(1) Panhandling after sunset and before sunrise.

(2) Panhandling when the individual being solicited is:

(A) at a bus stop;

(B) in a:

(i) vehicle; or

(ii) facility;

used for transportation;

(C) in a motor vehicle that is parked or stopped on a public street or alley, unless the person soliciting the individual has the approval to do so by a unit of local government that has jurisdiction over the street or alley;

(D) in the sidewalk dining area of a restaurant; or

(E) within twenty (20) feet of:

(i) an automated teller machine; or

(ii) the entrance to a bank.

(3) Panhandling while touching the individual being solicited without the solicited individual's consent.

(4) Panhandling while the individual being solicited is standing in line and waiting to be admitted to a commercial establishment.

(5) Panhandling while blocking:

(A) the path of the individual being solicited; or the entrance to a building or motor vehicle.

(6) Panhandling while using profane or abusive language:

(A) during a solicitation; or

(B) after the individual being solicited has declined to donate money or something else of value.

(7) Panhandling while making a statement, a gesture, or another communication to the individual being solicited that would cause a reasonable individual to:

(A) fear for the individual's safety; or

(B) feel compelled to donate.

(8) Panhandling with at least one (1) other individual.

(9) Panhandling and then following or accompanying the solicited individual without the solicited individual's consent after the solicited individual has declined to donate money or something else of value.

I.C. § 35–45–17–2.

Rather than ban all panhandling outright, the statute is restricted to only those circumstances when panhandling can be considered especially unwanted or bothersome—at night, around restaurants and sidewalk cafes, at financial institutions or commercial establishments, or by blocking an individual's path. These represent situations in which people most likely would feel a heightened sense of fear or alarm, or might wish especially to be left alone. Moreover, the statute is limited to the bare

request for cash or valuables. Under the statute, panhandlers may ply their craft lawfully by holding up a sign that says 'give me money' and sing 'I'm cold and starving,' so long as one does not voice the words to the effect of 'give me money.'

Here, while Officer Shaughnessy was walking northbound near Illinois and Maryland Streets, an area with several restaurants, a large mall, and numerous businesses, Alvies stepped in front of him and initiated conversation. After asking the Officer if he could help him out, Alvies specifically asked for "seven or eight dollars so he could get a room at the Atlas Hotel." (Tr. p. 9). When Officer Shaughnessy told him that he did not carry any money with him, Alvies continued to follow the Officer, stepping in front of him several times and asking him for money.

In support of his argument, Alvies focuses on the "immediate donation of money" language of the statute by contending that the demand for money must be made in "such a way and with such urgency that an individual would feel compelled to make a donation because of what appeared to be an urgent or dire situation." (Appellant's Br. p. 8). We find that Alvies mischaracterizes the term. Unlike Alvies' proposed interpretation, 'immediate' is more commonly understood as "without delay; instant." BLACK's LAW DICTIONARY 764 (8th Ed.1999). In this light, the "immediacy"

element of the statute is satisfied when the panhandler demands money at the moment he solicits the individual, instead of asking for a promise of a future donation or by referring to an urgent situation.[1]

Based on the facts before us, we conclude that Alvies panhandled. He solicited money from Officer Shaughnessy by stepping in front of him in the downtown business district at night and repeatedly requesting money. Therefore, we hold that the trial court properly convicted Alvies of panhandling, a Class C misdemeanor.

## CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to support Alvies' conviction of panhandling beyond a reasonable doubt.

Affirmed.

BRADFORD, J., concurs.

BAILEY, J., concurs in result.

---

1. Additionally, Alvies states that "this particular appeal would be one where a challenge to the constitutionality of it would appear to be in order." (Appellant's Br. p. 6). However, Alvies' appellate counsel claims that trial counsel failed to properly bring this issue before the trial court. At trial, after the State rested, trial counsel moved for an involuntary dismissal pursuant to Indiana Trial Rule 41(B) and argued that the panhandling Statute constitutes a "violation of [Alvies'] constitutional rights, namely, free speech and equal protection ..." (Tr. p. 18). The trial court responded "I don't think this was an issue before the court and, ..., wasn't properly raised." (Tr. p. 19). Assuming *arguendo*, that Alvies' constitutional claims were properly before the trial court, appellate counsel never developed the argument on appeal, let alone referred this court to citations to authorities or other supporting materials pursuant to Indiana Appellate Rule 46(A)(8). As such, he waived the issue for our review.