**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**STEVEN KNECHT**
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana



FILED
May 17 2012, 9:31 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARK ALDERMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 08A02-1110-CR-916 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CARROLL SUPERIOR COURT
The Honorable Kurtis G. Fouts, Judge
Cause No. 08D01-1010-CM-337

**May 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Mark Alderman (Alderman), appeals his conviction for cruelty to an animal, a Class A misdemeanor, Ind. Code § 35-46-3-7(a)

We affirm.

## ISSUE

Alderman raises one issue on appeal, which we restate as follows: Whether the State presented sufficient evidence to prove beyond a reasonable doubt that he committed cruelty to an animal.

## FACTS AND PROCEDURAL HISTORY

On October 7, 2010, Delphi Police Officer Justin Wilson (Officer Wilson) responded to a call reporting that a dog was running loose in Delphi, Indiana. He went to the location reported and noticed a teenager playing with a pit bull. The dog, named Devlin, had a laceration around his neck. Officer Wilson knew that Devlin belonged to Alderman because he had previously followed up on a report that Devlin was running loose and had talked to Alderman as a result of that report.

As Officer Wilson approached Alderman's house, he noticed a wire wrapped around a tree in the yard. The wire was approximately twelve feet long, the thickness of "double pencil lead," and frayed at the end where Devlin had broken loose. (Transcript p. 18). Officer Wilson asked Alderman about the injuries around Devlin's neck, and Alderman told him that they had occurred a few days previously and that Alderman had since been restraining Devlin indoors. Alderman guessed that Devlin had jumped out of

2

the window. Alderman also admitted that Devlin had sustained similar injuries previously, which had healed within a week. Officer Wilson asked Alderman whether he had sought medical care for Devlin's current injuries, and Alderman told Officer Wilson that he could not afford it, but that he had applied Neosporin to Devlin's neck. Officer Wilson advised Alderman that Devlin needed to see a veterinarian, so Alderman signed a waiver allowing Officer Wilson to take Devlin for treatment.

Veterinarian Dawn Frank (Doctor Frank) of the Horizon Clinic examined Devlin. She determined that Devlin's wound was approximately three to five days old and had cut through the skin and muscle into the subcutaneous tissue. She was concerned about the location of the wound because it was located over vital organs such as the jugular vein and the carotid artery and was not far from the trachea. Because the wound had not been treated earlier, she was unable to suture it and instead had to treat it as an open wound. She administered a sedative, cleaned and debrided the wound, and treated it topically. She also started Devlin on some antibiotics to fight infection and gave him a non-steroidal anti-inflammatory medicine for his pain. She kept Devlin overnight for observation.

On October 29, 2010, the State filed an Information charging Alderman with cruelty to an animal, a Class A misdemeanor, I.C. § 35-46-3-7(a). On June 27, 2011, a bench trial was held and the trial court found Alderman guilty as charged. On August 4, 2011, the trial court sentenced Alderman to 180 days suspended and one year of probation.

Alderman now appeals. Additional facts will be provided as necessary.

<u>DISCUSSION AND DECISION</u>

On appeal, Alderman argues that the State did not present sufficient evidence to prove beyond a reasonable doubt that he committed cruelty to an animal. When reviewing a sufficiency of evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 213 (Ind. Ct. App. 2007), *trans. denied.* In addition, we only consider the evidence most favorable to the verdict and reasonable inferences stemming from that evidence. *Id.* We will only reverse a conviction when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.* at 212-13.

In order to establish that Alderman committed cruelty to an animal, the State was required to prove beyond a reasonable doubt that Alderman had a vertebrate animal in his custody and "recklessly, knowingly, or intentionally abandon[ed] or neglect[ed] the animal." I.C. § 35-46-3-7(a). Indiana Code section 35-46-3-0.5(4) defines "neglect" as: "(C) restraining an animal in a manner that seriously endangers the animal's life or health; [or] (D) failing to: (i) provide reasonable care for; or (ii) seek veterinary care for; an injury or illness to a dog or cat that seriously endangers the life or health of the dog or cat."

Alderman first argues that the State did not prove that he acted "recklessly, knowingly, or intentionally" as required by I.C. § 35-46-3-7(a). Pursuant to I.C. § 35-41-2-2:

4

(a) A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.
(b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.
(c) A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

We recognize that the *mens rea* element of a charge may be proven by circumstantial evidence alone and may be inferred from the facts and circumstances of each case. *Baxter v. State,* 891 N.E.2d 110, 121 (Ind. Ct. App. 2008). The State is not required to prove *mens rea* by direct and positive evidence. *Id.*

With respect to Alderman's intentional or knowing failure to seek treatment for Devlin, Officer Wilson testified that Alderman had told him he knew that his care was inadequate, but that he could not afford to take Devlin to receive treatment. Alderman now denies this statement. However, we may not reweigh the evidence on appeal. *Perez*, 872 N.E.2d at 213. Instead, we find that Alderman's admission was sufficient evidence that he acted "knowingly," at the least.

Alternatively, Alderman argues that even if he admitted to Officer Wilson that he knew he should have taken Devlin to a veterinarian, that statement was not sufficient proof of his *mens rea* at the time of the injury three to five days earlier. We do not agree. It is evident from the record that even though the injury was three to five days old, it was still in need of treatment—as Alderman acknowledged when he discussed the issue with Officer Wilson. Doctor Frank testified that she was concerned that things could have

5

gotten worse for Devlin if he had continued without treatment. Accordingly, we do not find Alderman's argument persuasive.

Regarding Alderman's restraint of Devlin, Officer Wilson testified that Alderman admitted to him that he had used the wire to restrain Devlin, although Alderman now denies that statement as well. Alderman also admitted that the same injury had occurred previously as a result of the restraint. Based on this prior experience, we find that the State provided sufficient evidence that Alderman had knowledge that the restraint could injure Devlin and yet continued to use it again after Devlin had recovered from his first injury. We conclude that this is sufficient evidence that Alderman had the requisite *mens rea* regarding his decision to restrain Devlin with wire.

Next, Alderman argues that even if he had the required *mens rea*, his actions did not constitute neglect. Specifically, he had good reason to believe that Devlin's injury would heal under his treatment of Neosporin as it had before. Alderman notes that he used some of the same treatment methods that Doctor Frank later used. We cannot agree with these assertions. As we stated earlier, Alderman admitted that he should have taken Devlin to a doctor for treatment. This contradicts his argument that he believed Devlin's injuries would adequately heal under his own treatment. In addition, Doctor Frank did provide treatment that Alderman had not provided. She administered a sedative, cleaned and debrided the wound, treated the wound topically, started Devlin on some antibiotics, and gave Devlin a non-steroidal anti-inflammatory medicine for his pain, whereas Alderman merely applied Neosporin to Devlin's wound. Doctor Frank examined

6

Devlin's wound and testified that "it needed attention. It was [a] bad flesh wound and []

it should have had some sort of proper treatment." (Tr. p. 6).

Alderman also ignores that "restraining an animal in a manner that seriously

endangers the animal's life or health" also constitutes neglect. Alderman admitted to

restraining Devlin with a wire. Doctor Frank testified that this method of restraint

endangered Devlin's life because the wound was near vital organs and damage to those

organs could have been life threatening. She noted that if Alderman had continued to

restrain Devlin by the wire, there was a possibility that he would not have survived.

In light of these factors, we conclude that the State did provide sufficient evidence

that Alderman neglected Devlin, as defined in I.C. § 35-46-3-0.5(4). Because we have

already established that Alderman had the requisite *mens rea* for the charge of cruelty to

an animal, we therefore also conclude that the State provided sufficient evidence to prove

beyond a reasonable doubt that Alderman committed cruelty to an animal.

## CONCLUSION

Based on the foregoing, we conclude that the State provided sufficient evidence to

prove beyond a reasonable doubt that Alderman committed cruelty to an animal.

Affirmed.

NAJAM, J. and DARDEN, J. concur