**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**HILARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Jan 30 2013, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| FERNANDO SEBA, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )    No. 49A02-1207-CR-556 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert Altice, Judge
Cause No. 49G02-1109-FA-65752

**January 30, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Fernando Seba (Seba), appeals his conviction for Count I, child molesting, a Class A felony, Ind. Code § 35-42-4-3; and Counts II and III, child molesting, Class C felonies, I.C. § 35-42-4-3.

We affirm.

## ISSUE

Seba raises one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to sustain Seba's conviction for one Count of child molesting as a Class A felony.

## FACTS AND PROCEDURAL HISTORY

In 2011, J.M., born on November 5, 2005, lived with her mother, father, and two younger siblings in Indianapolis, Indiana. Seba, the mother's nephew, resided with the family. Seba regularly picked up J.M. and her siblings from the babysitter and watched them until mother and father arrived home from work. While Seba lived in the house, he kissed J.M. three times on her mouth, and "put his thing in [J.M.'s] thing" three times. (Transcript p. 26). J.M. explained that her "thing" meant her "cosa" in Spanish, which she uses to urinate. (Tr. pp. 31-32) She identified her cosa by pointing to the vagina on a diagram. After Seba placed his penis in her vagina, her vagina burned when she urinated. She also noticed that her underwear would become stiff afterwards.

One day, after Seba arrived home from work, he was lying on the couch. J.M. went upstairs to change into a skirt, as she had been wearing pants. After coming back

downstairs, J.M. took off her underwear and climbed on top of Seba, who was lying on his back. She pulled down the zipper of his pants and touched his penis with her hands. She was moving around while she was on top of him and he got an erection. He put his penis in her vagina.

On September 12, 2011, J.M. heard her mother talking about another young girl who had become pregnant after being molested and J.M. became afraid that she might be pregnant. While crying and upset, she told her mother that Seba had taken "down [her] underpants and was doing ugly things." (Tr. p. 54). The following day, mother and father took J.M. to the hospital where a doctor assured J.M. that she was not pregnant. They then went to the Keystone Child Advocacy Center, where Lanette Wheeler, a forensic child interviewer, talked with J.M.

Indianapolis Police Officer, Gregory Norris (Officer Norris), interviewed Seba at the police station. Seba told Officer Norris that J.M. came to him for sex. He said that it was "my fault because I didn't tell her not to continue doing that." (State's Exh. 2, p. 124). During the interview, he admitted that he put his penis in J.M.'s vagina but then later appeared to recant this testimony.

On September 14, 2011, the State filed an Information charging Seba with Count I, child molesting, a Class A felony and Counts II-IV, child molesting, as Class C felonies. On June 4 through June 5, 2012, the trial court conducted a bench trial. At the close of the evidence, the trial court found Seba guilty of child molesting, as a Class A felony, and two Counts of child molesting, as Class C felonies. Seba was found not guilty of one Count of child molesting, as a Class C felony. On June 27, 2012, the trial

3

court sentenced Seba to thirty years for the Class A felony child molesting and four years for each of the two Class C felonies child molesting, with sentences to be served concurrently.

Seba now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Seba contends that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction for one Count of child molesting as a Class A felony. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007), *trans. denied*. We will consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *See id*. at 213. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id*.

To convict Seba of child molesting, as a Class A felony, the State was required to establish beyond a reasonable doubt that Seba, who was at least twenty-one years of age, performed or submitted to sexual intercourse with a child of under fourteen years of age. *See* I.C. § 35-42-4-3. Sexual intercourse is defined as "an act that includes any penetration of the female sex organ by the male sex organ." I.C. § 35-41-1-26. Proof of the slightest penetration is sufficient to sustain convictions for child molesting. *Spurlock v. State*, 675 N.E.2d 312, 315 (Ind. 1996). A conviction for child molesting will be

4

sustained when it is apparent from the circumstances and the victim's limited vocabulary that the victim described an act which involved penetration of the sex organ. *Short v. State*, 564 N.E.2d 553, 558 (Ind. Ct. App. 1991). The unfamiliarity of a young victim with anatomical terms does not make her incompetent to testify when the facts are explained in simple or childlike language which the judge can understand. *Id*. at 558-59. Also, a detailed anatomical description of penetration is unnecessary. *Spurlock*, 675 N.E.2d at 315.

While Seba does not directly contest J.M.'s testimony describing the penetration, Seba attacks the State's questioning of the victim, claiming that the State derived the testimony by improperly refreshing J.M.'s recollection in violation of Indiana Evidence Rule 612.[1] Specifically, Seba asserts that before the State was allowed to refresh J.M.'s recollection, the State had to determine that J.M. did not recall the information sought—which it failed to do.

> During the direct examination of J.M., the following colloquy took place:
>
> [STATE]: And did he ever do anything else that he wasn't supposed to?
> [J.M.]: His thing, he put it on my thing.
> [STATE]: Okay. Did he put it on the outside or the inside of your thing?
> [J.M.]: A little bit out.
> [STATE]: Okay. Did he ever put his thing on the inside of your thing. Do you remember talking to a lady, Lanette and Carmen? Is that a yes or a no?
> [J.M.]: Yes.
> [STATE]: All right. And do you remember they showed you drawings of a girl and of boy? Is that a yes or a no?
> [J.M.]: Yes.

---

[1] Although Seba did not object to the testimony, he argues that it is presumed the trial court relied on it to reach its judgment because the only direct evidence of his guilt is J.M.'s testimony As such, Seba claims that he is not directly challenging the admission of the evidence but instead argues that a conviction cannot rest solely on inadmissible evidence even if was admitted without objection.

[STATE]: Do you remember telling Lanette and Miss Carmen that he put his thing on the inside of your thing?
[J.M]: Yes.
[STATE]: All right. So did he put his thing on the inside of your thing?
[J.M.]: Yes.

(Tr. pp. 25-26).

Indiana Rule of Evidence 612(a) provides, "[i]f while testifying, a witness uses a writing or object to refresh the witness' memory, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying." Our supreme court has explained that "[a]lthough Evidence Rule 612(a) clearly envisions the use of writings to refresh a witness' memory, it does not address the method by the which the witness' memory may be refreshed." *Thompson v. State*, 728 N.E.2d 155, 160 (Ind. 2000). The *Thompson* court noted that a simple colloquy is all that is required under Evid. Rule 612. *Id*.

> The witness must first state that he does not recall the information sought by the questioner. The witness should be directed to examine the writing, and be asked whether that examination has refreshed his memory. If the witness answers negatively, the examiner must find another route to extracting the testimony or cease the line of questioning.

*Id*.

Here, when questioned by the State if she remembered speaking with Lanette or Carmen, J.M. answered affirmatively. She clearly stated that she recalled the event. While it is debatable whether the question if she remembered telling Lanette and Miss Carmen that he put his thing on the inside of your thing was properly phrased for a direct examination, it is clear that J.M. was fully cognizant of the event, and did not need her recollection refreshed. Therefore, J.M.'s testimony was not obtained in violation of Evid.

6

R. 612 and was admissible. Consequently, the State presented sufficient evidence beyond a reasonable doubt to sustain Seba's conviction.

CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to sustain Seba's conviction for child molesting as a Class A felony.

Affirmed.

BAKER, J. and BARNES, J. concur