**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JERRY D. BOYCE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 16A01-1210-CR-453 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DECATUR SUPERIOR COURT
The Honorable Matthew D. Bailey, Judge
Cause No. 16D01-1002-FD-61

**April 30, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Jerry D. Boyce (Boyce), appeals his conviction for Count I, battery by bodily waste, a Class D felony, Ind. Code § 35-42-2-6(e); Count II, battery, a Class A misdemeanor, I.C. § 35-42-2-1(a)(1)(B); and Count III, battery, a Class B misdemeanor, I.C. § 35-42-2-1(a).

We affirm.

## ISSUE

Boyce raises one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt that Boyce had the requisite *mens rea* to commit the charges.

## FACTS AND PROCEDURAL HISTORY

In July 2000, when he was approximately thirty-three years old, Boyce suffered a brain aneurism. He survived because surgeons were able to clip the aneurism, but he subsequently developed a seizure disorder, with seizures occurring once or twice each month. Boyce has been on disability ever since.

On February 9, 2010, Boyce suffered several seizures at his mother's residence. When he remained still for almost an hour, his mother called 911. Decatur County paramedics arrived and they found Boyce unresponsive on the kitchen floor. Boyce eventually woke up, urinated on the kitchen floor, stumbled around the kitchen, and then started to walk towards his bedroom. Paramedic Matthew Morrow (Morrow) followed Boyce into the bedroom and asked him questions to assess Boyce's medical condition.

2

Boyce responded with profanity. The more Morrow questioned Boyce, the angrier Boyce became. Morrow followed Boyce toward the bed and Boyce, laying on the bed, struck and kicked Morrow. After fifteen to twenty minutes of Boyce responding to Morrow with profanities, Douglas Banks (Banks), the director of ambulance services who was also present, decided to transport Boyce to the hospital. Boyce's brother tried to calm him down, but Boyce just pushed him.

Greensburg Police Department Officer Brendan Bridges (Officer Bridges) was present at the house to assist the paramedics. After Boyce struck Morrow, Officer Bridges entered the bedroom. Boyce struck Officer Bridges on the shoulder. After Boyce aggressively postured to Officer Bridges, he and Officer Dennis Blodgett (Officer Blodgett) restrained Boyce and handcuffed him. The Officers escorted Boyce to the ambulance. During the ride to the hospital, Boyce managed to free one leg from the restraints used to secure him on the stretcher and throughout the drive, he continued to curse.

Boyce arrived at the hospital, approximately thirty-five minutes after his mother made the 911 call. At the hospital, it took five people to restrain Boyce in the emergency room. Boyce used profanities and tried to kick those around him. According to nurse Shelly Lanter (nurse Lanter), who attended to Boyce, the strikes were not random but aimed at people. Boyce also started to spit at those attempting to restrain him and spit on Officer Blodgett's uniform. Boyce pulled down his pants, exposed his penis, and told the nurses to suck it.

3

On February 17, 2010, the State filed an Information charging Boyce with Count I, battery by bodily waste, a Class D felony, Ind. Code § 35-42-2-6(e); Count II, battery, a Class A misdemeanor, I.C. § 35-42-2-1(a)(1)(B); and Count III, battery, a Class B misdemeanor, I.C. § 35-42-2-1(a). On July 9, 2010, Boyce filed a notice of intent to offer an affirmative defense of mental illness, disease, or defect, alleging that he was awakening from a seizure when the events leading to the charges took place. On July 21, 2011, the State and Boyce entered into a conditional plea agreement whereby Boyce agreed to plead guilty to Count I in exchange for the State dismissing the remaining Counts. The State also agreed to convert the Class D felony conviction of Count I to a Class A misdemeanor. However, on September 28, 2011, the trial court found Boyce incompetent to stand trial and committed him to the Division of Mental Health and Addiction.

On February 12, 2012, Boyce was found competent to stand trial. On August 20 through August 21, 2012, the trial court conducted a jury trial. During the trial, Boyce's brother, Jim Boyce (Jim), testified that it is a common pattern that after a seizure—during the postictal state—Boyce is confused, aggressive, and wants to go to sleep. Jim stated that Boyce would "look through you" and not recognize another person's presence. (Appellant's App. p. 258). This disrupted mental state can last for days and afterwards, Boyce will not remember anything. Jim explained that he had once found Boyce sitting on a six-foot high fence, that Boyce walks around the neighborhood clothed or unclothed, and urinates in inappropriate places. Jim stated that at times, Boyce hallucinates during his post-seizure state. Boyce's medical difficulties were not unknown in the Greensburg

4

community. Banks testified that he knew Boyce has seizures and was commonly aggressive when coming out of them.

Two court-appointed psychiatrists testified as to whether Boyce could comprehend the wrongfulness of his actions. Dr. Philip Coons (Dr. Coons), opined that:

> Although [Boyce] had a mental disease or defect which was certainly strong enough to affect his perception at times, [] he could understand the wrongfulness of his actions at the time of the alleged crime. And that was based on the fact that I felt that he basically had a rational motive for what he did. He did not want[] to go to the hospital and put up a fight against going to the hospital.

(Tr. p. 324). Dr. Coons stated that the postictal phase is "probably about a half an hour." (Tr. p. 326). Because Boyce's violent behavior continued after the phase ended, Dr. Coons determined that he "was engaged in purposeful directed behavior." (Tr. p. 326). During cross-examination, Dr. Coons acknowledged that in "the postictal behavior . . . they might get violent. And I think some observers might mistakenly think that that was purposeful. But it's not really." (Tr. p. 329).

On the other hand, Dr. Larry Ewert (Dr. Ewert) determined that Boyce "was suffering from a mental defect." (Tr. p. 294). He concluded that Boyce cannot appreciate the wrongfulness of his actions

> during the seizure, but also at other times. Because the type of brain injury from that part of the brain the aneurism is an area of the brain, and I put it in my report, that has to do with judgment and dis-inhibiting behavior. Meaning, people do things they might not do otherwise and they don't make good decisions and they react easily to anger. So, I think I just answered your question that it's not only during the seizure but in general.

(Tr. p. 297). Because of his brain damage, Boyce is "easily irritated and angered." (Tr. p. 298). In Dr. Ewert's opinion, the postictal period "could be an hour, easily." (Tr. p. 306). At the close of the evidence, the jury found Boyce guilty but mentally ill.

On September 20, 2012, the trial court conducted a sentencing hearing and sentenced Boyce to eighteen months executed on Count I, one year executed on Count II, and 180 days executed on Count III, with sentences to run concurrently.

Boyce now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Boyce contends that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007), *trans. denied*. We will consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *See id*. at 213. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id*.

To convict Boyce of battery by bodily waste, as a Class D felony, the State was required to establish beyond a reasonable doubt that he "knowingly or intentionally, in a rude, insolent, or angry manner" placed bodily fluid on Office Blodgett while that officer was engaged in the performance of his duties. I.C. § 35-42-2-6(e). For a conviction of battery against Officer Bridges, as a Class A misdemeanor, the State had to prove that

6

Boyce knowingly or intentionally touched Officer Bridges, while engaged in his duties, in a rude, insolent, or angry manner. *See* I.C. § 35-42-2-1(a)(1)(B). Finally, to establish battery against Morrow, as a Class B misdemeanor, the State was required to prove that Boyce knowingly or intentionally touched Morrow in a rude, insolent, or angry manner. *See* I.C. § 35-42-2-1(a). Here, the State charged Boyce with "knowingly" committing the offenses. Under the statute "[a] person engages in conduct knowingly if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-42-2-2(b).

While Boyce does not dispute the facts, Boyce's argument focuses on the State's evidence to establish the requisite *mens rea*. Highlighting the different conclusions between the two court-appointed psychiatrists, Boyce claims that Dr. Coons' testimony is "not reliable given the weight of the evidence." (Appellant's Br. p. 11). Specifically, Boyce maintains that in light of the evidence regarding Boyce's typical behavior during and post seizures, Dr. Coons' testimony that Boyce's postictal time lasted about thirty minutes and therefore he could form the requisite *mens rea* after thirty minutes had lapsed is illogical.

By declaring Boyce to be guilty but mentally ill, the jury clearly found Dr. Coons' testimony credible in that he opined that Boyce "was engaged in purposeful directed behavior." (Tr. p. 326). Focusing on the evidence in support of his position together with the allegation that Dr. Coons' testimony is unreliable, Boyce is in effect asking us to reweigh the evidence and the credibility of the witnesses. We decline his invitation to do so.

7

While we do not disregard the amount of evidence seemingly establishing that Boyce could not possibly have acted with the requisite knowledge, there is sufficient evidence of probative value from which a jury could find him guilty beyond a reasonable doubt. The EMT records reveal that Boyce's mother called 911 at 3:12 pm, with the paramedics arriving at the residence at 3:14 pm, finding Boyce unresponsive on the kitchen floor. Boyce was placed in the ambulance at 3:44 pm and arrived at the hospital thirty-six minutes after Boyce's mother made the emergency call. Dr. Coons testified that Boyce formed a rational motive of not wanting to go to the hospital and therefore put up a fight. Based on Dr. Coons' statement that Boyce's postictal phase lasted "probably about a half an hour," Boyce started to recover from the seizure when placed in the ambulance. (Tr. p. 326).

Moreover, other witnesses testified that Boyce was aware of the purposefulness of his actions. Morrow stated that while Boyce was in the kitchen, he was unresponsive and urinated on the floor. However, when he walked into his bedroom, Morrow testified that Boyce became more agitated and responded to his questions with profanity. He also explained that, in Morrow's opinion, Boyce's kicking him was voluntary because Boyce "turned and looked at me, then kicked me." (Tr. p. 166). Likewise, nurse Lanter, told the jury that Boyce's kicks in the emergency room were not random but aimed at certain people. Officer Blodgett, who was also present in the emergency room, clarified that Boyce would look at the person he swore at or attempted to strike. In sum, based on the totality of the evidence before us, we conclude that the jury could reasonably infer that

8

Boyce acted with the requisite knowledge when he struck Morrow, Officer Blodgett, and Officer Bridges.

CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to sustain Boyce's convictions.

Affirmed.

BRADFORD, J. and BROWN, J. concur