**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JESSE R. POAG**
Newburgh, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THOMAS BOSWELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1405-CR-193 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Tornatta, Judge
Cause No. 82D02-1307-FA-936

**October 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

Appellant/Defendant, Thomas Boswell ("Boswell"), appeals his conviction for Class A felony dealing in methamphetamine.[1]  He argues that there was insufficient evidence to support his conviction absent the testimony of his co-defendant, whom he claims was not credible.  Because we may not reweigh the credibility of Boswell's co-defendant on appeal, we conclude that there was sufficient evidence to support Boswell's conviction.

We affirm.

ISSUE

Whether there was insufficient evidence to support Boswell's conviction for Class A felony dealing in methamphetamine.

FACTS

Alan Vanwinkle ("Vanwinkle") lived in an apartment building in Evansville, Indiana in July of 2013.  Vanwinkle was addicted to methamphetamine and let people use his apartment to make methamphetamine in exchange for some of the resulting methamphetamine.  Although Boswell did not have a key to the apartment, he had stayed there previously and had an arrangement with Vanwinkle to use Vanwinkle's key and then return it to Vanwinkle when he left the apartment.  On the night of July 15, 2013, Vanwinkle returned to his apartment around 6 p.m. and found Boswell making

---

[1] IND. CODE §§ 35-48-4-1.1(a)(1)(A); and 35-48-4-1.1(b)(3).  We note that, effective July 1, 2014, a new version of the dealing in methamphetamine statute was enacted.  Because Boswell committed his offense in 2013, we will apply the statute in effect at that time.

methamphetamine in a half-gallon glass whiskey bottle. He let Boswell continue to make methamphetamine in the kitchen and living area of the apartment while he went to bed.

After sleeping for a while, Vanwinkle heard "a big scream and a bottle busting." (Tr. 21). He left his bed and saw Boswell pulling glass fragments out of his knee from the busted whiskey bottle. He also saw that Boswell's leg was bleeding. Boswell bandaged the wound while Vanwinkle swept glass off the floor. Boswell then scooped some of the shattered glass into a Mountain Dew bottle and began making another batch of methamphetamine.

About thirty minutes later, Vanwinkle received a phone call from a man he knew as "Chop." (Tr. 22). Chop arrived at the apartment, accompanied by a man named Greg. Chop went out to the balcony of the apartment to make methamphetamine. At some point after Chop arrived, another person began tapping on Vanwinkle's door really "light[ly]." (Tr. 54). Meanwhile, Bobby Vaughn ("Vaughn"), a maintenance technician for the apartment building, happened to be walking down the hallway of the apartment building outside of Vanwinkle's door at that time and saw the person tapping lightly on the door. As a joke, Vaughn said, "That ain't how you knock on a door. This is how you knock on a door." (Tr. 54). Vaughn knocked on the door "real loud." (Tr. 54). Boswell opened up the door and started "verbally cussing" at Vaughn, telling him that he had "no business beating on his door like that." (Tr. 54). While he was cussing at Vaughn, smoke started coming out of the top of the door, and the smoke had a "funny or foul smell." (Tr. 54). Vaughn asked Boswell if he was cooking methamphetamine in the apartment and told him that he was going to call the police.

3

Vaughn proceeded down the hallway and then heard a door. He turned around and saw two silhouettes exit the side door of the apartment unit and go down the staircase. He could not tell who the two people were because the hall was so smoky, but he noticed that one of them was carrying a backpack.

When he reached downstairs, Vaughn called 9-1-1, and law enforcement officers from the Evansville Police Department arrived at the scene. As soon as Officer Corey Nutt ("Officer Nutt") walked into the apartment building, he could detect "a smell that commonly resembles an active meth lab." (Tr. 96). He went to get gas masks for the officers. In the meantime, Officer Justin Jackson ("Officer Jackson") went to the fourth floor of the apartment, where Vanwinkle's apartment was. He found Boswell by the elevator and asked him which apartment he was heading towards. When Boswell stated that he was going to Vanwinkle's apartment, Officer Jackson detained him.

Shortly thereafter, Vanwinkle appeared by the elevator holding a trash bag. Officer Jackson opened the bag and saw that there was a "huge gas cloud." (Tr. 114). Because he did not have on his gas mask, Officer Jackson closed the bag. He then moved the bag down the hall with his foot and began evacuating the apartments on that floor of the building. He also searched Boswell and found a pocket knife and a small bag of marijuana.

After the other officers and the fire department arrived, Officer Jackson transported Boswell to jail, with a stop at the hospital to treat his wound. At the hospital, Officer Jackson saw the nurse pulling small pieces of glass from Boswell's leg.

4

Back at Vanwinkle's apartment, Officer Elizabeth McKinney ("Officer McKinney") interviewed an apartment resident, Daniel Craig ("Craig"). Craig told Officer McKinney that he had seen a bag outside of Vanwinkle's apartment that was smoking and had a strong odor. He had also seen a man take the bag outside of the building and throw the bag in the bushes at the corner of the building while another man got into a car and left.

Detective Brock Hensley ("Detective Hensley") with the Evansville Police Department arrived on the scene and was directed to a black backpack the police officers had found outside of the apartment building. The backpack contained a two-liter bottle and a one-liter container of "liquid fire," a material containing sulfuric acid. Based on his experience, Detective Hensley determined that the two-liter bottle was indicative of a "one-pot meth lab" that was "still under quite a bit of pressure." (Tr. 167). Detective Hensley took the bottle to a safe area and de-pressurized it so that it was safe. During that time, a Sergeant with the Evansville Police Department also rendered the black trash bag they had recovered from Vanwinkle safe. Afterwards, the officers examined the contents of the trash bag and found various products used to manufacture methamphetamine, including a "cut open ammonium nitrate;"[2] two "stripped out lithium batteries;" two glass jars; and a "little bit of pill dough," which is a byproduct of the methamphetamine manufacturing process. (Tr. 170).

---

[2] Detective Hensley testified that the ammonium nitrate necessary to manufacture methamphetamine comes from cold packs. In order to separate the ammonium nitrate, a person must "take the cold pack, cut the top, and [] remove the little pellets inside." (Tr. 7).

The next day, on July 16, 2013, a Housing Specialist for the Evansville Housing Authority that worked at Vanwinkle's apartment building noticed that there was another backpack and a two-liter bottle behind the air conditioning units outside of the building. She left the items there that day, but when they were still there the next day she reported them. Evansville Police Detective Patrick McDonald ("Detective McDonald") responded to the scene and found the backpack, the two-liter bottle, and a few bags. He opened the backpack and bags and discovered a l.5 liter bottle; a prescription bottle in Boswell's name; some coffee filters inside a plastic bag; two digital scales; a cellular phone; some pills; a used syringe; a glass wine bottle that had been used as an HCL gas generator; a two-pound container of Red Crown lye; an orange plastic cup; a pair of blue jeans with red liquid on them; two one-gallon cans of Coleman camp fuel; an eleven-ounce can of starting fluid; a container of drano crystals; and sodium hydroxide or lye-based drain cleaners in a measuring cup. He also found that the two-liter bottle next to the backpack contained an organic solvent. He identified all of these items as necessary for producing methamphetamine.

Subsequently, Detective McDonald looked up Boswell's NPLEX report. The NPLEX reporting system documents prescription pseudoephedrine-based cold medication purchases because Pseudoephedrine is a necessary ingredient for methamphetamine manufacturing. Boswell had purchased pseudoephedrine-based cold medication on July 10, 2013 and July 15, 2013. Both of these purchases were from a different pharmacy than the one listed on Boswell's prescription bottle found in the backpack.

6

On July 17, 2013, the State charged Boswell and Vanwinkle with Class A felony dealing in methamphetamine; Class D felony maintaining a common nuisance; and Class B misdemeanor criminal recklessness. However, on February 19, 2014, the State dismissed the maintaining a common nuisance and criminal recklessness charges against Boswell.[3] On February 20 and 21, 2014, the trial court held a jury trial on Boswell's charges. At trial, Vanwinkle testified as to the events that had occurred in his apartment. At the time, Vanwinkle's case had not been resolved, but the State had not offered him a plea agreement that required his testimony against Boswell. Vanwinkle testified that he was "not expecting any sort of help or more lenient treatment." (Tr. 38).

At the conclusion of the trial, the jury found Boswell guilty of Class A felony dealing in methamphetamine, and the trial court entered judgment of conviction. On April 23, 2014, the trial court sentenced him to thirty (30) years executed. Boswell now appeals.

## DECISION

On appeal, Boswell challenges the sufficiency of the evidence supporting his conviction for Class A felony dealing in methamphetamine. In order to convict Boswell as charged, the State was required to prove beyond a reasonable doubt that Boswell knowingly or intentionally manufactured methamphetamine within one thousand feet of a family housing complex. I.C. §§ 35-48-4-1.1(a)(1)(A); and 35-48-4-1.1(b)(3). When we review the sufficiency of the evidence supporting a conviction, we will only reverse a conviction when reasonable persons would not be able to form inferences as to each

---

[3] It is not clear from the record whether the State also dismissed these charges against Vanwinkle.

7

material element of the offense. *Perez v. State*, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007), *trans. denied.* We do not reweigh evidence or judge the credibility of witnesses. *Id.* at 213. In addition, we only consider the evidence most favorable to the verdict and the reasonable inferences stemming from that evidence. *Id.*

Boswell does not dispute that the State proved the elements of the charge against him. His only claim on appeal is that Vanwinkle's testimony, which provided a substantial amount of the evidence against him, was not credible because Vanwinkle was charged as his co-defendant. He argues that there was not sufficient evidence to prove the elements of dealing in methamphetamine without this testimony.

Generally, the testimony of an accomplice is subject to high scrutiny. *Stephenson v. State*, 742 N.E.2d 463, 496 (Ind. 2001), *cert. denied.* However, it is well-established that the testimony of an accomplice alone is enough to support a conviction. *Timberlake v. State*, 690 N.E.2d 243, 251 (Ind. 1997), *reh'g denied*, *cert. denied.* The fact that the accomplice may not be completely trustworthy goes to the weight and credibility of the witness's testimony, something that is completely within the province of the trier of fact and cannot be reviewed on appeal. *Id.* at 252. As Boswell only challenges Vanwinkle's credibility, we will not consider his argument on appeal. *Id*. Because he does not otherwise dispute the sufficiency of the evidence, we affirm his conviction.

Affirmed.

NAJAM, J., and BAILEY, J., concur.